UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL NOVAK,
                    Plaintiff,

v.

WEEKLEY HOMES, LLC                    Case No.: 8:26-cv-92
d/b/a DAVID WEEKLEY HOMES,
                    Defendant.


_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL NOVAK ("Plaintiff" or "Mr. Novak"), by and through undersigned counsel, hereby sues Defendant, WEEKLEY HOMES, LLC d/b/a DAVID WEEKLEY HOMES ("Defendant" or "Weekley Homes"), and alleges the following:


## NATURE OF THE ACTION

1.      This is an action for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. (the "FLSA").

2.      This is also an action for unlawful age discrimination in employment in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. (the "ADEA").

3.      Plaintiff seeks to recover unpaid overtime wages, liquidated damages, back pay, front pay, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.


## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 216(b) (FLSA) and 29 U.S.C. § 626(c) (ADEA).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, specifically in Sarasota County, Florida, within the Tampa Division.

6.      At all times relevant hereto, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(d) and 29 U.S.C. § 203(s)(1).

7.      At all times relevant hereto, Defendant was an "employer" within the meaning of 29 U.S.C. § 630(b) (ADEA), employing more than twenty (20) employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## PARTIES

8.      Plaintiff Michael Novak is an adult individual who resides in Englewood, Sarasota County, Florida.

9.      At all times relevant hereto, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), and was entitled to the protections afforded by said statute.

10.      At all times relevant hereto, Plaintiff was an "individual" within the meaning of the ADEA, 29 U.S.C. § 630(a), and was at least forty (40) years of age and thus entitled to the protections afforded by said statute.

11.     Defendant Weekley Homes, LLC d/b/a David Weekley Homes is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 1111 North Post Oak Road, Houston, Texas 77055.

12.     At all times relevant hereto, Defendant conducted substantial business operations in the State of Florida, including in Sarasota County, and may be served with process at its registered agent in Florida or through its operations at 18172 Foxtail Loop, Venice, Florida 34293.

13.     Defendant is one of the nation's largest privately owned homebuilders and employs more than 1,000 employees nationwide.

## ADMINISTRATIVE PREREQUISITES

14.     On or about October 30, 2025, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), alleging age discrimination in violation of the ADEA. The Charge was assigned EEOC Charge No. 511-2026-00363.

15.     Plaintiff has satisfied all conditions precedent to filing this action and/or such conditions have been waived or excused.

16.     More than sixty (60) days have passed since Plaintiff filed his Charge of Discrimination with the EEOC.

17.     Plaintiff may proceed with his ADEA claims in this Court pursuant to 29 U.S.C. § 626(d).

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment with Defendant*

18.     Plaintiff began his employment with Defendant on or about August 5, 2024, as a "Builder" working at Defendant's Palmera Wellen Park community in Venice, Florida.

19.     At the time of his hire, Plaintiff was sixty-one (61) years of age, having been born on November 13, 1962.

20.     Plaintiff was hired at an annual salary of $75,000.00, plus a monthly auto allowance of $350.00 and a monthly phone allowance of $125.00.

21.     The decision to hire Plaintiff was made by Construction Manager Robert Heine and Division President Nate Beauregard.

22.     Plaintiff's job duties primarily involved being present on construction sites to observe and inspect work performed by subcontractors, identify deficiencies, and report issues to management.

23.     Defendant classified Plaintiff as an exempt employee under the FLSA and did not pay him overtime compensation for hours worked in excess of forty (40) per workweek.

### *Plaintiff's Duties Did Not Involve Discretion or Independent Judgment*

24.     Despite Defendant's classification of Plaintiff as exempt, Plaintiff's actual job duties did not satisfy the requirements for the administrative exemption under the FLSA.

25.     Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

26.     Plaintiff was required to obtain management approval or authorization for all significant decisions affecting Defendant's business operations, including but not limited to the following:

(a)     Homeowner closing dates: Plaintiff could not schedule or commit to a closing date for any home without prior approval from the Project Manager or other management personnel;

(b)     Stage walks: Plaintiff was required to conduct stage walks—inspections at various phases of construction—with the Project Manager or Assistant Project Manager present, and could not independently approve the progression of a home from one construction stage to the next;

(c)     Field deviations from construction plans: Plaintiff had no authority to approve any deviations from the approved construction plans in the field, regardless of how minor, without obtaining management approval;

(d)     Aesthetic enhancements: Plaintiff could not approve even minor aesthetic enhancements to homes, such as adding accent walls as a perk to homeowners using excess materials already on-site, without first obtaining management approval; and

(e)     Vendor and contractor changes: Plaintiff had no authority to change vendors or subcontractors working in his community without management approval, even when Plaintiff believed different contractors would better serve the project.

27.     The foregoing examples demonstrate that Plaintiff lacked the authority to exercise discretion and independent judgment on matters of significance. Every significant decision—from scheduling closings to approving minor aesthetic improvements—required management approval.

28.     Plaintiff did not have authority to approve contracts, make purchasing decisions of significance, or commit Defendant to any course of action without prior management approval.

29.    Plaintiff's primary function was to serve as Defendant's "on-site eyes"—physically present at job sites to observe construction progress, identify issues, and report back to management for decision-making.

30.    All significant decisions regarding construction schedules, subcontractor management, budget expenditures, and customer relations were made by upper management, not by Plaintiff.

31.    Plaintiff was closely supervised by his managers and was expected to seek guidance and approval for decisions beyond routine inspection and reporting tasks.

32.    Plaintiff's work was primarily operational and production-related—ensuring homes were built correctly—rather than administrative work directly related to management policies or general business operations.

### *Plaintiff Regularly Worked Overtime Hours*

33.    Throughout his employment with Defendant, Plaintiff regularly worked in excess of forty (40) hours per workweek.

34.    On average, Plaintiff worked approximately fifty (50) hours per week—approximately ten (10) hours per day, five (5) days per week.

35.    Defendant knew or should have known that Plaintiff regularly worked overtime hours.

36.    Defendant failed and refused to pay Plaintiff overtime compensation at the rate of one and one-half (1.5) times his regular rate of pay for all hours worked in excess of forty (40) per workweek.

37.    Defendant's failure to pay overtime wages was willful and not in good faith.

*Calculation of Unpaid Overtime Wages*

38.    Plaintiff's unpaid overtime wages are calculated as follows:

(a)    Employment Period: August 5, 2024 to June 20, 2025 (approximately 46 weeks);

(b)    Weeks Worked (less approximately 4 weeks for holidays, sick time, and vacation): 42 weeks;

(c)    Annual Salary: $75,000.00;

(d)    Weekly Salary: $75,000.00 ÷ 52 = $1,442.31;

(e)    Regular Rate of Pay (Fluctuating Workweek): $1,442.31 ÷ 50 hours = $28.85 per hour;

(f)    Overtime Premium Owed per Hour (half-time): $28.85 ÷ 2 = $14.42;

(g)    Weekly Overtime Owed: $14.42 × 10 hours = $144.20;

(h)    Total Unpaid Overtime: $144.20 × 42 weeks = $6,056.40;

(i)    Liquidated Damages (FLSA): $6,056.40; and

(j)    Total Estimated FLSA Damages: $12,112.80 (excluding attorneys' fees and costs).

*Plaintiff's Excellent Job Performance*

39.    Throughout his employment with Defendant, Plaintiff performed his job duties diligently and competently.

40.    Plaintiff consistently maintained high standards on his job sites and received positive feedback from his supervisors.

41.    On or about June 4, 2025, Senior Builder Griffin McCormick told Plaintiff: *"I know I don't spend a lot of time down here, but you don't need me here babysitting your jobs, they look great. You're doing good work. I need to spend more time with the other guys over in Venice. They need more attention and guidance than you."*

42.    Mr. McCormick's statement demonstrates that Plaintiff's job sites required less supervision than those of his younger coworkers, who "need[ed] more attention and guidance" than Plaintiff.

43.    On Wednesday, June 18, 2025—just two (2) days before Plaintiff's termination—Mr. McCormick conducted two "stage seven" walks of homes Plaintiff was managing and stated: *"these are what stage seven houses should walk like."*

44.    Plaintiff was never subjected to any disciplinary action, written warning, performance improvement plan, or negative performance review during his employment with Defendant.

45.    Plaintiff was never informed of any performance deficiencies prior to his termination.

### Plaintiff's Discriminatory Termination

46.    On Friday, June 20, 2025, Defendant abruptly terminated Plaintiff's employment.

47.    At the time of his termination, Plaintiff was sixty-two (62) years of age.

48.    During the termination meeting, Plaintiff was not provided with any reason for his termination. Mr. McCormick informed Plaintiff: "we aren't going to speak of this, it's just this is your last day and we need you to turn in your keys and your computer."

49.    The lack of any stated reason for Plaintiff's termination, combined with the effusive praise of his work performance just two days earlier, demonstrates that Defendant's proffered reason of "unsatisfactory performance" is pretextual.

50.    Following Plaintiff's termination, his job duties were assumed by substantially younger individuals, including Collin Pratt, who is approximately thirty-one (31) years of age.

51.    To Plaintiff's knowledge, the other Builders in his division were all significantly younger than Plaintiff, with the oldest being approximately thirty-six (36) years of age.

52.    Defendant retained younger Builders who, by management's own admission, required more supervision and "attention and guidance" than Plaintiff.

### *Circumstantial Evidence of Age Discrimination*

53.    Plaintiff's termination was motivated by his age, in violation of the ADEA.

54.    The temporal proximity between Mr. McCormick's glowing praise of Plaintiff's work on June 4 and June 18, 2025, and Plaintiff's termination on June 20, 2025, demonstrates pretext.

55.    Defendant's decision to retain younger workers who required more supervision while terminating Plaintiff—who required less supervision—is inconsistent with a legitimate business justification and supports an inference of age discrimination.

56.    The complete absence of any progressive discipline, written warnings, or documented performance concerns prior to Plaintiff's termination is inconsistent with Defendant's post hoc justification and supports an inference of pretext.

57.    Defendant's refusal to provide any reason for Plaintiff's termination at the time of discharge, followed by the fabrication of performance-based justifications only after Plaintiff retained counsel, demonstrates that the stated reasons are pretextual.

58.    Plaintiff's age was the "but-for" cause of his termination.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Unpaid Overtime Wages – 29 U.S.C. § 207)

59.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58 as though fully set forth herein.

60.    At all times relevant hereto, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

61.    At all times relevant hereto, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e).

62.    At all times relevant hereto, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), having annual gross volume of sales or business done of not less than $500,000.

63.    Pursuant to 29 U.S.C. § 207(a)(1), Defendant was required to compensate Plaintiff at a rate of not less than one and one-half (1.5) times his regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

64.     Defendant misclassified Plaintiff as an exempt employee under the administrative exemption, 29 C.F.R. § 541.200.

65.     Plaintiff did not qualify for the administrative exemption because his primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

66.     Specifically, Plaintiff was required to obtain supervisory approval before scheduling homeowner closing dates, conducting stage walks, approving any field deviations from construction plans, making aesthetic enhancements to homes, and changing vendors or subcontractors.

67.     Plaintiff's primary duty was to serve as Defendant's on-site presence—inspecting construction work, identifying deficiencies, and reporting issues to management—not to exercise independent judgment on matters of significance.

68.     Plaintiff did not have authority to formulate, affect, interpret, or implement management policies or operating practices.

69.     Plaintiff was not authorized to commit Defendant in matters that had significant financial impact or to negotiate and bind Defendant on significant matters.

70.     Defendant knew or should have known that Plaintiff was misclassified and that he was entitled to overtime compensation.

71.     Throughout Plaintiff's employment, Defendant failed and refused to pay Plaintiff overtime wages for hours worked in excess of forty (40) per workweek.

72.     Defendant's failure to pay Plaintiff overtime wages was willful within the meaning of 29 U.S.C. § 255(a).

73.    As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff has suffered damages in the amount of $6,056.40 in unpaid overtime wages.

74.    Plaintiff is entitled to recover his unpaid overtime compensation of $6,056.40, an equal amount in liquidated damages of $6,056.40 pursuant to 29 U.S.C. § 216(b), for total FLSA damages of $12,112.80, plus prejudgment interest, and reasonable attorneys' fees and costs.

## COUNT II

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (29 U.S.C. § 623(a))

75.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58 as though fully set forth herein.

76.    At all times relevant hereto, Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b), having twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

77.    At all times relevant hereto, Plaintiff was an "individual" within the meaning of the ADEA, 29 U.S.C. § 630(a), and was at least forty (40) years of age.

78.    The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1).

79.    Plaintiff was a member of the protected age group, being sixty-two (62) years of age at the time of his termination.

80.     Plaintiff was qualified for the position of Builder, as evidenced by his satisfactory—indeed, praised—job performance.

81.     Plaintiff suffered an adverse employment action when Defendant terminated his employment on June 20, 2025.

82.     Plaintiff was replaced by, or his duties were assumed by, substantially younger individuals outside the protected age class, or at minimum, significantly younger than Plaintiff.

83.     Defendant's stated reason for Plaintiff's termination—unsatisfactory performance—is pretextual, as demonstrated by the following:

(a)     Mr. McCormick praised Plaintiff's work on June 4, 2025, stating that Plaintiff's job sites "look great," that Plaintiff was "doing good work," and that younger coworkers "need more attention and guidance" than Plaintiff;

(b)     Mr. McCormick again praised Plaintiff's work on June 18, 2025—just two days before termination—stating that Plaintiff's homes were exemplary of "what stage seven houses should walk like";

(c)     Plaintiff was never subjected to any disciplinary action, written warning, or performance improvement plan;

(d)     Defendant refused to provide any reason for Plaintiff's termination at the time of discharge;

(e)     Defendant's post hoc justifications were fabricated only after Plaintiff retained legal counsel; and

(f)     Defendant retained younger employees who, by management's own admission, required more supervision than Plaintiff.

84.     Plaintiff's age was the "but-for" cause of Defendant's decision to terminate his employment.

85.     As a direct and proximate result of Defendant's violations of the ADEA, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, and other compensatory damages.

86.     Defendant's conduct was willful within the meaning of 29 U.S.C. § 626(b), entitling Plaintiff to liquidated damages.

87.     Plaintiff is entitled to recover back pay, front pay, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MICHAEL NOVAK respectfully requests that this Court enter judgment in his favor and against Defendant WEEKLEY HOMES, LLC, and award the following relief:

**A.     On Count I (FLSA):**

(1)     Unpaid overtime wages in the amount of $6,056.40;

(2)     Liquidated damages in an amount equal to the unpaid overtime wages ($6,056.40) pursuant to 29 U.S.C. § 216(b);

(3)     Prejudgment interest;

(4)     Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

B.      **On Count II (ADEA):**

(1)     Back pay, including all lost wages and benefits;

(2)     Front pay, or in the alternative, reinstatement;

(3)     Liquidated damages in an amount equal to the back pay award pursuant to 29

U.S.C. § 626(b);

(4)     Prejudgment interest;

(5)     Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 626(b);

C.      **On All Counts:**

(1)     Pre-judgment and post-judgment interest as allowed by law;

(2)     All costs of this action; and

(3)     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MALATESTA LAW OFFICE**

/s/ Frank M. Malatesta
**FRANK M. MALATESTA, ESQ.**
Florida Bar No. 0097080
871 Venetia Bay Blvd., Suite 235
Venice, Florida 34285
Telephone: (941) 256-3812
Facsimile: (888) 501-3865

Email: Frank@Malatestalawoffice.com

*Attorney for Plaintiff*